IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

|  |  |  |
|---|---|---|
| CRAIG THOMAS JONES,<br><br>      Plaintiff,<br><br>           v.<br><br>STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury; CHARLES P. RETTIG, in his official capacity as Commissioner of Internal Revenue; MICHAEL R. POMPEO, in his official capacity as Secretary of State; and THE UNITED STATES,<br><br>      Defendants. | \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* | CV 119-222 |

### O R D E R

Presently before the Court is Defendants' motion for summary judgment (Doc. 17), Plaintiff's cross-motion for summary judgment (Doc. 27), and Plaintiff's motion for hearing (Doc. 38).[1]  For the following reasons, Defendants' motion is **GRANTED**, and Plaintiff's motions are **DENIED**.

---

[1] The Parties have thoroughly briefed the issues before the Court; thus, a hearing is not necessary for the resolution of the Parties' motions.  Plaintiff's motion for hearing (Doc. 38) is **DENIED**.

## I. BACKGROUND

This case arises from Plaintiff's inability to renew his passport due to his federal tax liability.  Plaintiff has federal income tax liability for the years 2000, 2002, 2005, 2006, 2008, and 2009.  (Pl.'s Second Am. Compl., Doc. 31, ¶ 18.)  As a result of his liability, which totaled $404,928.24, the Department of the Treasury, through the Internal Revenue Service ("IRS"), certified Plaintiff as having "seriously delinquent tax debt" pursuant to 26 U.S.C. § 7345.  (Id. ¶ 20; Doc. 17, at 1.)  Thereafter, the Department of State issued a letter to Plaintiff explaining that he is "ineligible to receive passport services" due to the certification.  (Pl.'s Second Am. Compl., ¶ 24.)  Plaintiff contends there are no facts in dispute for the purposes of the Parties' summary judgment motions and the only issue is whether Section 7345 is constitutional.  (See Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., Doc. 26, at 2.)  Thus, the Court will not delve into the specific facts surrounding the certification of Plaintiff's tax debt as "seriously delinquent."

## II. The FAST Act

Section 7345 was enacted pursuant to Section 32101 of the Fixing America's Surface Transportation Act (the "FAST Act") to increase tax compliance.[2]  See FAST Act, § 32101(a), Pub. L. No.

---

[2] For a complete description of the FAST Act legislative history see Maehr v. U.S. Dep't of State ("Maehr R&R"), No. 18-CV-02948,

114-94, 129 Stat. 1312, 1729 (2015).   Under Section 7345, "[i]f the Secretary [of the Treasury ("Secretary")] receives certification by the Commissioner of Internal Revenue that an individual has a seriously delinquent tax debt, the Secretary shall transmit such certification to the Secretary of State for action with respect to denial, revocation, or limitation of a passport." 26 U.S.C. § 7345(a).   Seriously delinquent tax debt is debt that is greater than $50,000.   Id. § 7345(b)(1)(B).   Before the IRS can certify a tax debt as seriously delinquent, it must be "assessed."[3] However, a tax liability will not be assessed by the IRS until

> the amount of the liability has been determined through an administrative process that provides the taxpayer with notice and an opportunity to challenge the IRS's position . . . includ[ing] the right to petition the United States Tax Court for a redetermination . . . and the right to appeal an adverse Tax Court decision to the Court of Appeals for the relevant circuit.

Maehr R&R, 2019 WL 8359183, at *3 (citing 26 U.S.C. §§ 6213(a) and 7482).   Moreover, prior to certification, the IRS "must attempt to collect the debt through a specific administrative process." Id.; see 26 U.S.C § 7345(b)(1)(C) (requiring "a notice of lien [to be] filed pursuant to section 6323 and the administrative rights under section 6320 with respect to such filing [to be] exhausted or have

---

2019 WL 8359183, at *2 (D. Colo. Sept. 27, 2019), *report and recommendation adopted in part*, 2020 WL 967754 (D. Colo. Feb. 28, 2020).

[3] "[A]ssessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203.

lapsed, or . . . a levy is made pursuant to section 6331" prior to certification). Additionally, debt that "is being paid in a timely manner pursuant to an agreement to which the individual is party under section 6159 or 7122" or debt that "collection is suspended . . . because a due process hearing under section 6330 is requested or pending" or because innocent spouse relief is requested under Section 6015 cannot be certified as seriously delinquent. See 26 U.S.C § 7345(b)(2).

Section 7345 also requires that the IRS contemporaneously notify an individual of any certification. Id. § 7345(d). Finally, Section 7345 outlines situations in which certification should be reversed and how to challenge erroneous certifications. See id. §§ 7345(c), (e).

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-

4

moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted).  The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23.  When the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex Corp., 477 U.S. 317 (1986)).  The movant cannot satisfy its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id.  When the non-

5

movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden.   For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."   Id. at 1116-17.   The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.   See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).   Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.   Additionally, although *pro se* litigants are entitled to some leniency, they must still establish that there is a dispute as to a material fact.   Osahar v. Postmaster Gen., 263 F. App'x. 753, 761 (11th Cir. 2008).

In this action, the Clerk of Court provided all parties notice of the opposing party's motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default.   (Docs. 18, 28.)   For that reason, the

notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motions are now ripe for consideration.

## IV. ANALYSIS

### A. Constitutionality of Section 7345

Plaintiff challenges Section 7345 on its face and argues the statute infringes on the right to international travel, which is fundamental and thus strict scrutiny must be applied, or in the alternative, the right is "important enough to warrant an intermediate scrutiny standard." (Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 4.) Plaintiff cites to the First Amendment, Ninth Amendment, Fifth Amendment, Fourteenth Amendment, and the Privileges and Immunities Clause as sources of the right. (<u>See</u> <u>id.</u> at 3-4.)

#### 1. <u>Ninth Amendment</u>

First, Plaintiff turns to the Ninth Amendment for support. However, Plaintiff concedes the Ninth Amendment is "not an independent source of rights in itself." (<u>Id.</u> at 7.) In fact, it is well established that "the Ninth Amendment standing alone houses no constitutional guarantees of freedom." <u>Metz v. McKinley</u>, 583 F. Supp. 683, 688 n.4 (S.D. Ga.) (citing <u>Charles v. Brown</u>, 495 F. Supp. 862 (N.D. Ala. 1980)), <u>aff'd</u>, 747 F.2d 709 (11th Cir. 1984); <u>see also</u> <u>Ayton v. Owens</u>, No. CV 313-006, 2013 WL 4077995, at *5

n.5 (S.D. Ga. Aug. 12, 2013) ("[T]he Ninth Amendment is not an independent source of constitutional rights."). Thus, the Ninth Amendment provides no basis for Plaintiff's claim.

2. Privileges & Immunities Clause

Plaintiff also points to the Privileges and Immunities Clause in Article IV, Section 2 of the Constitution as a source of the right to international travel. (See Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 22-26.) The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2. As Plaintiff acknowledges, the Privileges and Immunities Clause applies to state action, not federal action. (See Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 22.) It "prevents a state from discriminating against citizens of other states in favor of its own." Hague v. Comm. for Indus. Org., 307 U.S. 496, 511 (1939) (citations omitted). Despite Plaintiff's citation to various Supreme Court precedent, the Supreme Court has never "held an action taken by any branch of the federal government is subject to scrutiny under the Privileges and Immunities Clause." Pollack v. Duff, 793 F.3d 34, 41 (D.C. Cir. 2015). Instead, "[t]he Supreme Court has consistently explained the clause restricts the authority of the states without ever so much as implying it might also apply to the federal government." Id. (citing Baldwin v. Fish & Game Comm'n of Mont., 436 U.S. 371, 383 (1978); Hicklin v. Orbeck, 437 U.S. 518, 523-24 (1978)). Moreover, other circuits

have expressly held that the Privileges and Immunities Clause does not apply to federal action. See id. (citing cases from the First, Fifth, and Ninth Circuits); see also Maehr v. U.S. Dep't of State, No. 18-cv-02948, 2020 WL 967754, at *4 (D. Colo. Feb. 28, 2020) (finding the right of international travel is not protected by the Privileges and Immunities Clause). Thus, the Privileges and Immunities Clause provides no basis for Plaintiff's claim.

### 3. First Amendment

Plaintiff contends "the First Amendment is another doctrinal source of the right to travel both internationally and at home." (Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 21.) However, Plaintiff offers no explanation as to how the First Amendment is implicated here. (See id. at 21-22.) Defendants argue "§ 7345 does not require that delinquent taxpayers surrender their First Amendment rights." (Doc. 35, at 13.) The Court agrees. Here, the denial of Plaintiff's passport renewal application "does not result from any expression or association on his part; [he] is not being forced to choose between membership in an organization and freedom to travel." See Zemel v. Rusk, 381 U.S. 1, 16 (1965). Thus, Plaintiff has no First Amendment claim.

### 4. Fourteenth Amendment

Plaintiff discusses substantive due process in the context of the Fourteenth Amendment. (See Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 13, 17-20.) "The Due Process Clause of the Fourteenth Amendment provides 'nor shall any *State* deprive any

9

person of life, liberty, or property, without due process of law.'"
McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (quoting
U.S. CONST. amend. XIV, § 1) (emphasis added).  Here, there is no
state action; therefore, the Fourteenth Amendment is not
implicated.  See Washington v. Glucksberg, 521 U.S. 702, 722 (1997)
(explaining that the "threshold requirement" in Fourteenth
Amendment due process judicial review is establishing "that a
challenged state action implicate a fundamental right"); SP
Frederica, LLC v. Glynn Cnty., 173 F. Supp. 3d 1362, 1373 (S.D.
Ga. 2016) (explaining "the Fifth Amendment applies only as a
limitation on the federal government" while "the Due Process Clause
of the Fourteenth Amendment . . . explicitly applies to the
states").   Thus, Plaintiff has no claim under the Fourteenth
Amendment.

   5. Fifth Amendment

   Given Supreme Court precedent, the right to international
travel is more properly analyzed in the context of Fifth Amendment
Due Process.  See Kent v. Dulles, 357 U.S. 116, 125 (1958) ("The
right to travel is a part of the 'liberty' of which the citizen
cannot be deprived without the due process of law under the Fifth
Amendment."); Zemel, 381 U.S. at 16 n.17 ("[T]he right to travel
is protected by the Fifth Amendment.").   The Fifth Amendment
provides that "[n]o person shall be . . . deprived of life,
liberty, or property, without due process of law."   U.S. CONST.

amend. V.   Plaintiff alleges that his Fifth Amendment rights to substantive and procedural due process have been violated.

a. *Substantive Due Process*

The substantive component of the Fifth Amendment's guarantee of due process of law "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-302 (1993) (citations omitted). There is no dispute that there is a constitutional right to international travel. See Kent, 357 U.S. at 129 ("[A Passport's] crucial function today is control over exit. And, as we have seen, the right of exit is a personal right included within the word 'liberty' as used in the Fifth Amendment."). However, the Supreme Court has made evident that "the *freedom* to travel outside the United States" is not the same as the "*right* to travel within the United States." Haig v. Agee, 453 U.S. 280, 306 (1981). While "[t]he constitutional right of interstate travel is virtually unqualified . . . [,] the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." Id. at 307 (internal quotations and citations omitted). "Thus, legislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel." Califano v. Aznavorian, 439 U.S. 170, 176-77 (1978).

Plaintiff asks this Court to find that the right to international travel is fundamental. However, the Supreme Court has been presented with multiple opportunities to do so and has not. See Eunique v. Powell, 302 F.3d 971, 976-78 (9th Cir. 2002) (outlining the development of jurisprudence in the right to travel arena). Instead, as explained above, the Supreme Court has explicitly held that legislation infringing on the right to international travel should not be judged by the same standard as legislation infringing on the right to interstate travel. Moreover, several circuit courts have rejected the idea that the right to international travel is fundamental. See Eunique, 302 F.3d at 973 (holding rational basis review applies to restrictions on international travel rights that do not implicate First Amendment concerns); Weinstein v. Albright, 261 F.3d 127, 140 (2d Cir. 2001) (holding the "right to a passport and to travel internationally, while a liberty interest protected by the Due Process Clause of the Fifth Amendment, is not a fundamental right equivalent to the right to interstate travel"); Hutchins v. District of Columbia, 188 F.3d 531, 537 (D.C. Cir. 1999) (explaining that the Supreme Court has "made clear that any right to travel [internationally] . . . [is] distinct from the recognized right to interstate travel . . . [and] international travel is no more than an aspect of liberty that is subject to reasonable government regulation within the bounds of due process, whereas

12

interstate travel is a fundamental right subject to a more exacting standard").

The Supreme Court cautions lower courts to "exercise the utmost care whenever . . . asked to break new ground in this field." Washington, 521 U.S. at 720 (citations omitted); see also Campos v. I.N.S., 32 F. Supp. 2d 1337, 1347 (S.D. Fla. 1998) ("[C]ourts should exercise great resistance to expanding the substantive reach of the Due Process Clause of the Fifth Amendment, particularly if it requires redefining the category of rights deemed to be fundamental."). Thus, this Court will not expand substantive due process by recognizing a new fundamental right.

The Court now turns to the applicable standard of review. The Supreme Court has not clarified what standard courts should apply in reviewing statutes that infringe the right to international travel. Eleventh Circuit case law is also silent on the issue. Generally "[s]tatutes that infringe fundamental rights . . . are subject to strict scrutiny, which requires that the statute be narrowly tailored to achieve a compelling government interest." Williams v. Pryor, 240 F.3d 944, 947 (11th Cir. 2001) (citations omitted). However, "when a statute does not implicate [a] fundamental right[], we must ask whether it is 'rationally related to legitimate government interests.'" Doe v. Moore, 410 F.3d 1337, 1345 (11th Cir. 2005) (quoting Glucksberg, 521 U.S. at 728). "The rational basis standard is 'highly deferential' and we hold legislative acts unconstitutional under a rational basis

13

standard in only the most exceptional circumstances." Id. (citation omitted); see also Williams, 240 F.3d at 948 ("Almost every statute subject to the very deferential rational basis scrutiny standard is found to be constitutional."). In accordance with this law, and having found a fundamental right has not been implicated here, the Court concludes that strict scrutiny is not required.

Plaintiff contends, at the very least, immediate scrutiny applies. (Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 28.) Plaintiff argues "the majority opinion in [Zemel] can be read as applying an intermediate scrutiny standard to government restrictions on the right to international travel." (Id.) In Zemel, the Secretary of State refused to validate the appellant's passport for travel to Cuba because of foreign policy considerations. 381 U.S. at 13. The Supreme Court rejected the appellant's argument that "the Secretary's refusal to validate his passport for travel to Cuba denies him rights guaranteed by the First Amendment." Id. at 16. Instead, the "less than wholly free flow of information" that resulted from the restriction was merely a "factor to be considered in determining whether [an individual] has been denied due process of law." Id. Here, the Court has already determined that Section 7345 does not implicate the First Amendment, thus, the heightened scrutiny in Zemel is not warranted.

Therefore, the Court finds that Section 7345 is subject to rational basis scrutiny. Notably, the Second and Ninth Circuits

14

have also applied rational basis review to similar restrictions on international travel. See Eunique, 302 F.3d at 974 (upholding 42 U.S.C. § 652(k) because it "easily passes" rational basis review); Weinstein, 261 F.3d 127 at 141 (finding 42 U.S.C. § 652(k) passes rational basis review). Here, the collection of seriously delinquent tax debt is undoubtedly a legitimate government interest. See Bull v. United States, 295 U.S. 247, 259 (1935) ("[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need."); Maehr, 2020 WL 967754, at *6 (citing United States v. First Nat'l Bank of Chi., 699 F.2d 341, 346 (7th Cir. 1983) (stating that the United States' interest in collecting taxes "is of importance to the financial integrity of the nation")). Plaintiff does not dispute this; instead, he argues the statute is not rationally related to the government's interest. Plaintiff's main argument is that Section 7345, which restricts passports to those with "seriously delinquent tax debts," is distinguishable from 42 U.S.C. § 652(k), which allows the Secretary to "revoke, restrict, or limit a passport issued previously" to an individual that "owes arrearages of child support in an amount exceeding $2,500."

First, Plaintiff argues most of the challenges to Section 652(k), such as Weinstein, have been litigated *pro se* and thus are not persuasive authority. (Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 32.) The Court finds no reason to find case law less persuasive because of the *pro se* status of a party. Next,

15

Plaintiff argues "child support debts are not ordinary debts . . . unlike individual tax debts with their trivial impact on the nation's multi-trillion-dollar budget" and "the lives of children are a more compelling interest than adding pennies to the Treasury."   (Id. at 33.)   Even if the government has a "more compelling" interest in protecting children, that does not take away from the fact that the government also has a legitimate interest in collecting tax debts.   Here, the Court has already determined the government has a legitimate and significant interest in collecting seriously delinquent tax debts.   Plaintiff has offered no argument that this interest is not rationally related to the Secretary's authority to revoke passports to those with such debts.   As the Ninth Circuit explained in Eunique:

> Surely it makes sense to assure that those who do not pay their child support obligations remain within the country, where they can be reached by our processes in an at least relatively easy way.   Notably, even when the Court iterated the constitutional right to travel in Kent,   . . . it, without disapproval, took notice of a long-standing policy of denying passports to those who were "trying to escape the toils of the law" or "engaging in conduct which would violate the laws of the United States." A person who fails to pay child support may well attempt to escape the toils of the law by going abroad, and may even be violating the laws of the United States."

302 F.3d at 975.   The Court finds the same rationale can be applied to tax debts.   Thus, Section 7345 passes rational basis review, and Plaintiff's substantive due process challenge is rejected as a matter of law.

16

b. *Procedural Due Process*

Plaintiff also argues the pre-deprivation notice under Section 7345 fails to satisfy the requirements of due process. Due process requires that an individual whose rights are to be affected be given notice and an opportunity to be heard. See Fuentes v. Shevin, 407 U.S. 67, 80 (1972). Moreover, "the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" Id. (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). This means it "must be granted at a time when the deprivation can still be prevented." Id. at 81. But "unlike some legal rules, [Due Process] is not a technical conception with a fixed content unrelated to time, place and circumstances." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)). It "is flexible and calls for such procedural protections as the particular situation demands." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Section 7345 provides procedural due process protections. Before certifying that an individual has a "seriously delinquent tax debt," a notice of lien must be "filed pursuant to section 6323 and the administrative rights under section 6320 with respect to such filing have been exhausted or have lapsed" or a levy must be made pursuant to Section 6331. See 26 U.S.C. § 7345(b).

Prior to filing a notice of lien, Section 6320 requires that an individual be given notice of various information, including

17

"the provisions of section 7345 relating to the certification of seriously delinquent tax debts and the denial, revocation, or limitation of passports of individuals with such debts pursuant to section 32101 of the FAST Act" and their right to a fair hearing. See id. §§ 6320(a)(3)(B), (E). Section 6331 also requires the Secretary to notify an individual of the provisions of Section 7345 prior to proceeding with levy. See id. § 6331(d)(4)(G). Thus, an individual receives notice of the consequences of Section 7345 prior to the Commissioner certifying their tax liability as "seriously delinquent tax debt." As Defendants point out, "certification comes only at the tail end of a long series of opportunities to be heard on the underlying tax liability and to resolve the seriously delinquent tax debts." (Doc. 35, at 6); see also supra Part II. These notice and hearing requirements comport with due process.

## B. *ne exeat republica*

Plaintiff also argues "the statute fails to survive even minimum scrutiny in light of analogous *ne exeat* cases under which there is no rational basis to prevent a taxpayer from leaving the country unless there is violation of a court order or the hiding of assets overseas." (Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 4.) The power to issue a writ *ne exeat republica* is codified at 26 U.S.C. § 7402. Section 7402 states: "The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and

orders . . . of *ne exeat republica* . . . for the enforcement of the internal revenue laws."   Plaintiff cites to United States v. Shaheen, 445 F.2d 6 (7th Cir. 1971), and argues that because the right to international travel is a constitutional right, "the Government may not obtain a writ of *ne exeat* as a matter of course" but instead "must establish that the tax debtor is attempting to leave the country with his assets, or has done so and refuses to repatriate those assets."   (Pl.'s Br. in Opp'n & Cross-Mot. for Summ. J., at 35.)

It is true that to issue a writ of *ne exeat republica* certain requirements must be met and "the Government has the burden of demonstrating that the restraint of liberty is a necessary, and not merely coercive and convenient, method of enforcement." Shaheen, 445 F.2d at 11.   However, a writ of *ne exeat republica* was not issued here.   Instead, Section 7345 is being used to enforce tax laws.   The Court agrees with the District Court of Colorado that the predicates required for a writ *ne exeat* under Section 7402 are not applicable because "[t]he statute under which the government revoked plaintiff's passport, 26 U.S.C. § 7345, is separate and distinct."   Maehr, 2020 WL 967754, at *7.

## C. Proper Parties

Defendants allege Secretary Mnuchin, Commissioner Rettig, and Secretary Pompeo are not proper parties to this suit.   (See Doc. 35, at 23-25.)   Because the Court finds Section 7345 is not

unconstitutional and Plaintiff's suit is due to be dismissed, the Court will not address this issue.

### V. CONCLUSION

For the reasons set forth above, Plaintiff's cross-motion for summary judgment (Doc. 27) and motion for hearing (Doc. 38) are **DENIED**, and Defendants' motion for summary judgment (Doc. 17) is **GRANTED**. The Clerk is directed to **ENTER JUDGMENT** in favor of Defendants, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _8th_ day of March, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA